**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC,<br>    Plaintiff,<br><br>v.<br><br>CHECK POINT SOFTWARE TECHNOLOGIES INC. and CHECK POINT SOFTWARE TECHNOLOGIES LTD.,<br>    Defendants. | CIVIL ACTION NO. ~~——————~~ 1:21-cv-00837-LPS<br><br>**JURY TRIAL DEMANDED** |

**~~ORIGINAL~~FIRST AMENDED COMPLAINT**

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud"), by and through its undersigned counsel, files this ~~Original~~First Amended Complaint for patent infringement against Defendant Check Point Software Technologies Inc. ("CPSTI") and Check Point Software Technologies Ltd. ("CPSTL") (collectively, "Defendant" or "Check Point") as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C,** and **Exhibit D**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,560,613 | Disambiguating File Descriptors |
| B. | 6,651,063 | Data Organization And Management System And Method |
| C. | 7,209,959 | Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain Providing Anonymity To A Client Communicating On The Network |
| D. | 8,762,498 | Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain |

## PARTIES

2.   DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

3.   Based upon public information, CPSTI is a corporation duly organized and existing under the laws of the state of Delaware since July 25, 1995.

4.   Based upon public information, CPSTI has its principal place of business located at 959 Skyway Road, Suite 300, San Carlos, California, 94070 (San Mateo County).

5.   Based upon public information, CPSTI is a subsidiary and agent of CPSTL.

6.   Based upon public information, CPSTL is a corporation duly organized and existing under the laws of Israel.

7.   Based upon public information, CPSTL has its principal place of business located at 5 Shlomo Kaplan Street, Tel Aviv 6789159, Israel.

8.   Based upon public information, CPSTI may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

9.   Based upon public information, CPSTL may be served through CPSTI.

## JURISDICTION AND VENUE

10.   This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

11.   The Court has personal jurisdiction over Check Point because: Defendant has minimum contacts within the State of Delaware and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Delaware and in this District;

Defendant has sought protection and benefit from the laws of the State of Delaware and is incorporated there; Defendant regularly conducts business within the State of Delaware and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Delaware and in this District.

12. More specifically, Check Point directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Delaware, and in this District.

13. Based upon public information, Check Point solicits customers in the State of Delaware and in this District and has many paying customers who are residents of the State of Delaware and this District and who use its products in the State of Delaware and in this District. Check Point is also incorporated in the State of Delaware and in this District.

14. Venue is proper pursuant to 28 U.S.C. § 1400(b) because CPSTI resides in the District of Delaware because of its formation under the laws of Delaware.

15. Venue is proper pursuant to 28 U.S.C. § 1391(c)(3) because CPSTL is a foreign corporate entity such that venue is therefore proper in any judicial District, including the District of Delaware, where personal jurisdiction is proper.

16. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because CPSTI resides in the District of Delaware because of its formation under the laws of Delaware, which subjects it to the personal jurisdiction of this Court.

## BACKGROUND INFORMATION

17. The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") after full and fair examinations.

18. Plaintiff is the owner of the Patents-in-Suit, and possesses all right, title and interest in the Patents-in-Suit including the right to enforce the Patents-in-Suit, the right to license the

Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages.

19. Plaintiff has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

20. Plaintiff does not sell, offer to sell, make, or use any products itself, so it does not have any obligation to mark any of its own products under 35 U.S.C. § 287.

21. By letter dated April 19, 2021, DataCloud put Defendant on notice of its infringement of the Patents-in-Suit. *See* **Exhibit E** (hereinafter, the "Notice Letter").

## DEFENDANT'S PRODUCTS AND SERVICES

22. Based upon public information, Check Point owns, operates, advertises, and/or controls the website [www.checkpoint.com](www.checkpoint.com) through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services, including Security Gateways with virtualization, Capsule VPM Android application, Check Point Web Services, and Web Server. *See* **Exhibit F.**

23. Based upon public information, Defendant provides training and educational information for its products. *See* **Exhibit G.**

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,560,613

24. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

25. U.S. Patent No. 6,560,613 (hereinafter, the "'613 Patent"), was issued on May 6, 2003 after full and fair examination by the USPTO of Application No. 09/500,212 which was filed on February 8, 2000. *See* Ex. A. A Certificate of Correction was issued on August 26, 2003. *See id.*

26. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '613 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or

advertises its Check Point Security Gateways/CloudGuard VE/vSEC.

27. Upon information and belief, Defendant's Check Point Security Gateways/CloudGuard VE/vSEC meet each and every element of at least Claim 8 of the '613 Patent, either literally or equivalently.

28. A person skilled in the art covered in the '613 Patent would understand that each of the limitations and/or steps in the claims, including Claim 8, of the '613 Patent are defined by what they are (not what they do). Even if any limitation and/or step of the claims is "functional"—and none are—the teachings of the '613 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

~~28.~~29. Based upon public information, Defendant's Check Point Security Gateways/CloudGuard VE/vSEC have infringed one or more claims of the '613 Patent, including Claim 8, because they provide a method for disambiguating file descriptors in a computer system (using KVM and VMWare) through a process which intercepts the system calls that store files on media, stores one or more file type indicators for each file descriptor in a table, and determines what file type is associated with the file descriptor based on a review of the stored file type indicators. KVM and VMWare, each used in Defendant's Check Point Security Gateways/CloudGuard VE/vSEC, employs disambiguation of file descriptors (files/sockets/pipes) that are used in shadowed I/O system call routines by intercepting them, storing related indicators (*e.g.*, reference to images), and examining those stored indicators to determine the associated file type.

~~29.~~30. Defendant's aforesaid activities have been without authority and/or license from

Plaintiff.

~~30.~~31.   Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,651,063

~~31.~~32.   Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

~~32.~~33.   U.S. Patent No. 6,651,063 (hereinafter, the "'063 Patent"), was issued on November 18, 2003 after full and fair examination by the USPTO of Application No. 09/493,911 which was filed on January 28, 2000.  *See* Ex. B.  A Certificate of Correction was issued on February 3, 2004.  *See id.*

~~33.~~34.   Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '063 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Check Point Capsule VPM (the "Check Point Android App").

~~34.~~35.   Upon information and belief, the Check Point Android App meets each and every element of at least Claim 4 of the '063 Patent, either literally or equivalently.

36.   A person skilled in the art covered in the '063 Patent would understand that each of the limitations and/or steps in the claims, including Claim 4, of the '063 Patent are defined by what they are (not what they do).  Even if any limitation and/or step of the claims is "functional"— and none are with the exception of those that specifically invoke the "means" language—the teachings of the '063 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well

known to skilled artisans at the priority date.

35.37.  Based upon public information, the Check Point Android App has infringed one or more claims of the '063 Patent, including Claim 4 because it provides a method for storing and controlled access of data in a repository by storing information in an "information pack" (uploading "your first APK to production" such as "com.checkpoint.VPN_1600051_apps.evozi.com.apk") to which is associated the address of a data repository, a "category identifier" (*e.g.*, "data" directory), and a "provider identifier" ("Check Point Software Technologies Ltd.").  The information pack is sent to the specified data repository (among a group) and stored there in a location reserved for the specified category identifier (". . . Android/data") that is specifically created for the information pack (*e.g.*, file folder of Check Point Android App is reserved for information), and a "custom category identifier" (*e.g.*, "custom category identifier" can be the digital signature for the Check Point Android App) is assigned to the information pack.  The custom category identifier is subsequently used to identify other information packs that should be stored in the same location based on matching category identifiers (*e.g.*, valid Android APK files contain a signature which allows to identify the author of the APK file, which allows verification that an updated version comes from the same author).

36.38.  Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

37.39.  Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,209,959

38.40.  Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

39.41.  U.S. Patent No. 7,209,959 (hereinafter, the "'959 Patent"), was issued on April 24, 2007 after full and fair examination by the USPTO of Application No. 09/542,858 which was filed on April 4, 2000.  *See* Ex. C.

40.42.  Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '959 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Check Point Web Services".

41.43.  Upon information and belief, the Check Point Web Services meet each and every element of at least Claim 1 of the '959 Patent, either literally or equivalently.

44.     A person skilled in the art covered in the '959 Patent would understand that each of the limitations and/or steps in the claims, including Claim 1, of the '959 Patent are defined by what they are (not what they do).  Even if any limitation and/or step of the claims is "functional"—and none are—the teachings of the '959 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

42.45.  Based upon public information, Defendant has infringed one or more claims of the '959 Patent, including Claim 1, because the Check Point Web Services provide a method of, in response to a request (*e.g.*, ""Client Hello") by a client (*e.g.*, 10.0.0.3) to initiate communication with a destination website (*e.g.*, www.checkpoint.com); setting up a forwarding session (*e.g.*, from the internet to a WWW server) between the client (*e.g.*, internet device) and a destination server corresponding to the destination website (*e.g.*, WWW server), the forwarding session employing a forwarder disposed between (*e.g.*, a front-end server switch) the client and the destination server

to forward packets sent from the client to the destination server and to forward packets sent from the destination server to the client (*e.g.* bilateral communications); employing the forwarder (*e.g.* front-end server switch), to transfer packets (*e.g.,* ethernet or others) between the client (*e.g.*, internet device) and the destination server (*e.g.*, WWW server) during the forwarding session, wherein the forwarding session is set up and implemented such that neither the client or the destination server is aware of the employment of the forwarder (*e.g.*, the WWW server has a direct TCP connection between a local address of, say, 172.31.15.21:22 and a client address of, say, 96.72.88.222:64947; thus, neither the client or the destination server is aware of the employment of the forwarder); employing a controller configured to communicate (*e.g.*, firewall) with the forwarder (*e.g.*, front-end server switch) and a domain name server (*e.g.*, a DNS), wherein the controller queries the domain name server to resolve the name of the destination website (*e.g.*, checkpoint.com) associated with the destination server (*e.g.*, WWW server) and initiates communication (*e.g.*, between the firewall and front-end server switch) with the forwarder in response to an answer from the domain name server to resolve the name of the destination website associated with the destination server; employing a deceiver (*e.g.*, router) configured to communicate with the controller (*e.g.*, firewall) and the client (*e.g.*, internet device), wherein the deceiver receives the request by the client to initiate communication (*e.g.*, from the internet to the router) with the destination website (*e.g.*, WWW server) and initiates the controller to query the domain name server to resolve the name of the destination website associated with the destination server (*e.g.*, the router both (i) receives the request and (ii) sends the data from the WWW server in a manner that makes the router appear to be the source of the data, when the source of the data is actually the WWW server); and in response to the controller (*e.g.*, router) receiving the answer from the domain name server and initiating communication with the forwarder initiating the

forwarding session.

~~43.~~46.  Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

~~44.~~47.  Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,762,498

~~45.~~48.  Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

~~46.~~49.  U.S. Patent No. 8,762,498 (hereinafter, the "'498 Patent"), was issued on June 24, 2014 after full and fair examination by the USPTO of Application No. 13/731,731 which was filed on December 31, 2012.  *See* Ex. D.

~~47.~~50.  Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '498 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Check Point Web Servers Using TLS 1.2 (the "Check Point Web Servers").

~~48.~~51.  Upon information and belief, the Check Point Web Servers meet each and every element of at least Claim 1 of the '498 Patent, either literally or equivalently.

52.   A person skilled in the art covered in the '498 Patent would understand that each of the limitations and/or steps in the claims, including Claim 1, of the '498 Patent are defined by what they are (not what they do).  Even if any limitation and/or step of the claims is "functional"— and none are—the teachings of the '498 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function

that were well known to skilled artisans at the priority date.

49.53.  Based upon public information, the Check Point Web Servers have infringed one or more claims of the '498 Patent, including Claim 1, because it provides a system of hardware and software that is configured to respond to a request for data by identifying a virtual namespace destination address (*e.g.*, www.checkpoint.com) from a selection of categories (*e.g.*, checkpoint.com, checkpoint.cz, chpt.de, andy.tk, all hosted on 209.87.209.100) that is related to the virtual namespace destination address (*e.g.*, the category of "checkpoint.com" is related to the virtual namespace destination address of "www.checkpoint.com") to determine a device with a specific forwarder IP address (Check Point operates a forwarder device with a forwarder IP address and the selected web server will operate with a destination IP address and instruct it to send the request for data to the destination IP address and the forwarder device it instructed to send the request data to the destination IP address (*e.g.*, through a WWW server and SNI Routing).

50.54.  Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

51.55.  Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

52.56.  Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

53.57.  Plaintiff respectfully requests the following relief:

    A.    An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Check

    Point;

B. An award of damages to be paid to compensate Plaintiff for Check Point's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Check Point's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

C. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

D. Any further relief that this Court deems just and proper.

Dated: ~~June 8~~August 16, 2021        Respectfully submitted,

**Stamoulis & Weinblatt, LLC**

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com

James F. McDonough, III (Bar No. 117088, GA)*
Jonathan R. Miller (Bar No. 507179, GA)*
Travis E. Lynch (Bar No. 162373, GA)*
**HENINGER GARRISON DAVIS, LLC**
3621Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5502, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

*Attorneys for Plaintiff DataCloud Technologies, LLC*

*admitted *pro hac vice*

**LIST OF EXHIBITS**

A. U.S. Patent No. 6,560,613

B. U.S. Patent No. 6,651,063

C. U.S. Patent No. 7,209,959

D. U.S. Patent No. 8,762,498

E. Letter dated April 19, 2021 from DataCloud's Counsel ("Notice Letter")

F. Webpage: Products Offered

G. Webpage: Training Offered

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

Date: August 16, 2021   　　　　　　　　　*/s/ Stamatios Stamoulis*
　　　　　　　　　　　　　　　　　　　　Stamatios Stamoulis #4606